Argued and submitted March 7, reversed and remanded May 7, petition for
review allowed October 2, 2014 (356 Or 397)

In the Matter of the Compensation of
Royce L. Brown, Sr., Claimant.

Royce L. BROWN, Sr.,
*Petitioner,*

*v.*

SAIF CORPORATION
and Harris Transportation Company, LLC,
*Respondents.*

Workers' Compensation Board
1102146; A151889

325 P3d 834

Julene M. Quinn argued the cause for petitioner. With
her on the briefs was Kryger Alexander Carlson PC.

Julie Masters argued the cause and filed the brief for
respondents.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Claimant seeks review of an order of the Workers' Compensation Board upholding the denial of his combined-condition claim based on the board's determination that SAIF Corporation (SAIF) had established that claimant's accepted lumbar strain is no longer the major contributing cause of his combined condition. The facts are not in dispute. We review for errors of law, ORS 656.298(7), ORS 183.482(7), (8), and reverse and remand for reconsideration.

We take the facts from the administrative law judge's (ALJ's) findings of fact, which the board adopted and which SAIF does not challenge. Claimant has been working for employer as a truck driver since March 2002. In 1993, claimant underwent an MRI of his lumbar spine when he experienced back pain after falling at a friend's house. In 2002, he slipped and fell on his buttocks in a restaurant bathroom. A lumbar x-ray showed degenerative changes. Nevertheless, the medical records show no treatment between 2002 and July 2006, when claimant appeared in the emergency room with complaints of a one-month history of worsening pain that radiated down his right leg to his calf.

In 2006, claimant received a referral to an orthopedist, Dr. Matthew Gambee. After an updated MRI revealed an L4-5 disc protrusion with compression of the L4 nerve root along with a plethora of degenerative changes, Gambee performed an epidural steroid injection, which provided no relief. A referral to a neurosurgeon, Dr. Hoang N. Le, followed. Le performed a surgery that included a right-sided L4-5 decompression, discectomy, and transforaminal lumbar interbody fusion. In April 2007, claimant reported having no back or leg pain and was released to full duty.

From April 2007 through the date of the work injury, claimant performed his regular duties as a truck driver. He had an ongoing symptom of numbness in the middle two toes of his right foot. He had occasional minor back pain "that most people get with a lot of lifting."

The claim at issue involves an accident on December 14, 2008. After hanging heavy truck-tire chains under his

truck, claimant experienced a sudden burning with sharp pain in his lower back that radiated into his right leg. On the following day, he made his way to the emergency room, making those same complaints. X-rays of his back showed no evidence of acute bone or joint abnormality so the doctor placed him on modified duty restrictions and prescribed pain medications.

Later, claimant saw Dr. Susan Davis who diagnosed a lumbar strain secondary to the December 14, 2008, work injury. Claimant reported no improvement with physical therapy. His symptoms of back pain with aching into his right hip and down the right leg continued. A scan revealed L4-5 right marked foraminal stenosis related to spondylolisthesis and spurring. Ultimately, claimant received a referral back to his neurosurgeon, Le, who ordered an MRI that revealed an alignment abnormality, bony spurring around the fusion, and a narrowing of the right L4 neural foramen. Le referred claimant back to Gambee for steroid injections, which provided no relief. Le then recommended removal of certain instrumentation in claimant's back and a new surgery for the decompression of the right L4-5 nerve root.

SAIF accepted a claim for a disabling "lumbar strain." SAIF made arrangements for a medical examination to close the claim. Dr. Fernando Proano completed a closing examination on August 18, 2009; he declared claimant "medically stationary" and announced that there were no impairment findings due to the "accepted condition." SAIF issued a notice of closure that awarded no permanent-disability benefits for the accepted lumbar strain.

In October 2009, Le performed a right L4-5 surgery removing the instrumentation and decompressing the L4 nerve root. Claimant obtained no significant relief from the surgery and continued to experience low back pain with symptoms radiating into his right leg.

In January 2010, claimant requested acceptance of "lumbar strain combined with lumbar disc disease and spondylolisthesis." SAIF issued a denial of the combined-condition claim, and claimant requested a hearing. An ALJ heard the case and issued an opinion and order that set aside the denial. SAIF issued a modified notice of acceptance of

"lumbar strain combined with preexisting lumbar disc disease and preexisting spondylolisthesis."

Less than two months later, SAIF sent claimant to a medical examination with Dr. Edmund Frank, who opined that the "lumbar strain combined with lumbar disc disease and spondylolisthesis" had resolved by August 18, 2009, and that the work injury had ceased to be the major contributing cause of claimant's disability and need for treatment. Frank further opined that claimant's symptoms related to right L5 radiculopathy secondary to the preexisting spondylolisthesis at L4-5, the fusion-related pseudoarthrosis at L4-5, and the scarring of the nerve root were unrelated to the work injury. In April 2011, SAIF issued a denial of claimant's "current combined condition," stating that his "accepted injury has ceased to be the major contributing cause" of the "lumbar strain combined with the preexisting disc disease and preexisting spondylolisthesis, on or after August 19, 2009."

Claimant requested a hearing. His attorney solicited a report from Proano, who had prepared the report for the first notice of closure, and who wrote that claimant was still being treated for the combined condition of "lumbar strain combined with preexisting lumbar disease and preexisting spondylolisthesis." Proano explained that, having now taken claimant's preexisting condition into account, he had changed his opinion and no longer believed that claimant was medically stationary. Proano opined that claimant's current symptoms represented a pathological worsening of his preexisting conditions and had resulted from the work injury. Proano explained that the spinal loading forces involved in the work injury were consistent with a pathological worsening of the preexisting lumbar disease as well as claimant's right L5 radiculopathy.

SAIF's attorney solicited a report from Frank, who opined that the lumbar strain was no longer the major contributing cause of claimant's disability or need for treatment for the combined condition. He reasoned that Proano's earlier declaration that the lumbar strain had become medically stationary without permanent impairment indicated a change in circumstances, because the strain had resolved and was no longer a significant contributing factor

to claimant's disability and need for treatment. He further opined that the 2006 lumbar fusion was unsuccessful and resulted in a large bony spur and scarring of the L4 and L5 nerve roots. He noted that claimant had residual pain and numbness following the 2006 fusion and that claimant was not completely symptom-free before the 2008 work injury.

In a post-hearing deposition, Proano clarified that his report provided after the August 18, 2009, closing examination had addressed the lumbar strain alone and not the entire combined condition. He stated his current opinion that the combined condition had not resolved and that he was still treating that condition. Proano expressed the view that the December 14, 2008, work injury was "driving treatment for [claimant's] preexisting conditions," which had been accepted as part of the combined condition. He opined that the work injury had caused a pathological worsening of the preexisting conditions. He reasoned that, as a result of the December 2008 work injury, claimant had experienced a significant change in his condition which had worsened from a mild lumbar radiculopathy or radiculitis to significant lumbar radiculopathy and a foot drop. He further opined that the December 14, 2008, work injury involved a sudden loading force on claimant's spine due to lifting heavy chains in an awkward manner, resulting in an acute narrowing of the already narrowed foramen and injury to the nerve root, which in turn resulted in weakness and pain in the right lower extremity.

In an order upholding SAIF's denial of the combined condition, the ALJ reasoned that it was SAIF's burden to prove "that the 'lumbar strain' component" of the accepted combined condition was no longer the major contributing cause of [claimant's] disability or need for treatment." The ALJ accepted SAIF's argument that it was the claimant's obligation to demand acceptance of a worsening of the underlying degenerative changes. Absent an acceptance of those specific degenerative conditions, the ALJ reasoned that resolution of the accepted strain amounted to resolution of the work-related injury.

Claimant timely challenged the ALJ's order, and the board affirmed, reasoning that this court's decision in

*Reid v. SAIF*, 241 Or App 496, 250 P3d 444, *rev den*, 351 Or 216 (2011), supported its holding.

In this petition for judicial review, claimant argues that, in upholding SAIF's denial of his combined-condition claim based on proof that the accepted lumbar strain had ceased to be the major contributing cause of his disability or need for treatment, the ALJ and the board have improperly conflated the statutory terms "otherwise compensable injury" and "accepted condition." He contends that, in order to deny the combined condition, SAIF was required to prove that his "accidental injury" was no longer the major contributing cause of his combined condition. Claimant acknowledges that the evidence presented at the hearing shows that the "accepted condition" of lumbar strain is no longer the major contributing cause of his combined condition, but he contends that there is no evidence to the effect that the "accidental injury" is no longer the major contributing cause of his disability or need for treatment.

For its part, SAIF argues that the ALJ and the board applied the proper legal standard to assess the merits of the specific combined condition claim that was accepted by SAIF and then denied. In essence, SAIF argues that, once it defines the "accepted condition," it can sustain its burden of proof to deny the combined condition by showing that the specific accepted condition is no longer the major contributing cause of the combined condition.

Our review of the statutes, legislative history, and case law leads us to conclude that claimant has the better argument. We begin with the definition of "compensable injury" in ORS 656.005(7)(a). A compensable injury is an "accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability or death." *Id.* Thus, the definition of a compensable injury is injury-incident focused. It requires a determination that there was an injury incident that caused disability or required treatment—*i.e.*, an accidental injury—arising out of and in the course of the employment. That definition is subject to the following limitation:

> "If an otherwise compensable injury combines at any time with a preexisting condition to cause or prolong disability or

a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the * * * need for treatment of the combined condition."

ORS 656.005(7)(a)(B). Thus, a "combined condition" is subject to the heightened, "major contributing cause" standard of proof, in contrast to the "material contributing cause" standard for other work-related injuries. *Hopkins v. SAIF*, 349 Or 348, 351, 245 P3d 90 (2010).

After receiving a claim, the insurer must send written notice of acceptance or denial of the claim to the worker that specifically states what "conditions are compensable." ORS 656.262(6)(b)(A). Under ORS 656.262(6)(c), an insurer may deny a combined condition that it previously has accepted if the "otherwise compensable injury ceases to be the major contributing cause of the combined * * * condition." Furthermore, ORS 656.266(2)(a) provides, as relevant:

"Once the worker establishes an otherwise compensable injury, the employer shall bear the burden of proof to establish the otherwise compensable injury is not, or is no longer, the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

Thus, if a worker establishes a compensable combined condition, then ORS 656.266(2)(a) shifts the burden of proof to the insurer or employer to establish that the "otherwise compensable injury" has ceased to be the major contributing cause of the worker's disability or need for treatment of the combined condition.

Because the insurer bears the burden of establishing that the otherwise compensable injury has ceased to be the major contributing cause of the disability or need for treatment of the combined condition, the insurer must determine the contribution of the otherwise compensable injury to the disability or the need for treatment of the combined condition. SAIF contends that it meets that burden by establishing that the claimant's accepted condition—in this case the lumbar strain—has ceased to be the major contributing cause of his disability or need for treatment of the combined condition. Thus, SAIF contends, in essence, that

the phrase "otherwise compensable injury," as used in ORS 656.262(6)(c) and ORS 656.266(2)(a), equates with the condition that the carrier has accepted as compensable in the notice of acceptance pursuant to ORS 656.262(6)(b)(A).

Despite SAIF's contention, there is no statutory provision that expressly links the compensability of a combined condition to its relationship to an "accepted condition"; rather, the compensability of the combined condition depends on its relationship to the "otherwise compensable injury."[1] Furthermore, as noted, "compensable injury" is specifically defined in ORS 656.005(7)(a) as an "accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability or death." That injury-incident-based definition of "compensable injury" does not make the compensability of an injury dependent on the insurer's acceptance of particular conditions. SAIF's interpretation gives the insurer the ability to define and limit the scope of a compensable injury by specifically articulating the "accepted condition." As we explain below, the relevant legislative history indicates that the legislature did not intend to so limit the injury-incident-based definition of "compensable injury."

The definition of "compensable injury" in ORS 656.005(7)(a) preceded the legislature's 1990 adoption of the requirement that insurers list the specific conditions they accept as compensable in the notice of acceptance.[2] *See* Or Laws 1990, ch 2, § 15. The legislature amended the definition of "compensable injury" in ORS 656.005(7) in 1990 to include a provision relating to combined conditions. *See* Or Laws 1990, ch 2, § 3.[3] Jerry Keene, a proponent of the

---

[1] The phrase "accepted condition" appears three times in ORS chapter 656, specifically in ORS 656.268(1)(b), ORS 656.268(15), and ORS 656.704(3)(b)(B). The term does not appear in ORS 656.245(1)(a) or ORS 656.005(7)(a)(B). The phrase "accepted condition" is not defined in the statute, whereas the phrase "compensable injury" is defined in ORS 656.005(7)(a).

[2] When we interpret statutes, the intention of the legislature is ascertained by examining the text of the statute in context, along with any relevant legislative history, and, if necessary, application of the canons of statutory construction. *See State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009).

[3] In 1990, the statute used the phrase "resultant condition" instead of "combined condition." We discern no difference in the meaning of those terms for purposes of our analysis.

legislation, testified that the amendments did not change "the basic industrial injury definition," and that the amendments were only designed "to attack conditions that * * * were there before the injury and things that were coming in after." Tape Recording, Joint Special Committee on Workers' Compensation, SB 1197, May 3, 1990, Tape 8, Side B (statement of Jerry Keene). With regard to the "combined condition" analysis, Keene explained that the language "left the actual on-site episode untouched." *Id.* Thus, a proponent of the legislation indicated that there was no intent to change the *incident*-based definition of a "compensable injury."

In 1995, the legislature amended the definition of compensable injury in ORS 656.005(7)(a)(B) to its current language. *See* Or Laws 1995, ch 332, § 1. A cosponsor of the bill, Representative Kevin Mannix, explained that the purpose of the amendment was to reinforce some of the changes that had been made in 1990. Tape Recording, Senate Labor and Government and Operations Committee, SB 369, Jan 30, 1995, Tape 15, Side A (statement of Rep Kevin Mannix). Mannix spelled out the changes:

> "In terms of the definition of a compensable injury, this section states that the worker's claim will be accepted if the *on the job injury* is the major contributing cause of the condition for which compensation is being claimed."

*Id.* (emphasis added).[4] Mannix repeatedly emphasized that a "combined condition" would be compensable so long as "the injury incident" was the major contributing cause of that condition. *Id.* Furthermore, he expressly explained that the phrase "otherwise compensable injury," as used in ORS 656.005(7)(a)(B), meant the "work injury," the "industrial injury," the "injury incident," or the "work incident." Tape Recording, House Committee on Labor, SB 369, Mar 1, 1995, Tape 38, Side B (statements of Rep Kevin Mannix); Tape Recording, House Committee on Labor, SB 369, Mar 3, 1995, Tape 41, Side A (statements of Rep Kevin Mannix).

---

[4] The legislative history largely uses the phrase "resultant condition" instead of "combined condition" because the former phrase was used until the hand-engrossed versions of the bill were circulated. *See* Tape Recording, House Committee on Labor, SB 369, Mar 22, 1995, Tape 63, Side A.

Notably, Mannix did not equate the "otherwise compensable" injury with the accepted condition. He explained that requiring the insurer or employer to accept a specific condition was a function of establishing "responsibility" under ORS 656.308. Tape Recording, House Committee on Labor, SB 369, Mar 6, 1995, Tape 46, Side A (statements of Rep Kevin Mannix). He said that the proposed amendment, now enacted as ORS 656.262(6)(d) and ORS 656.267, to require a worker to request a modification of acceptance for new or omitted medical conditions

> "is really not aimed so much at the worker as the attorney. I never saw, in my experience, *a worker ever complain about the notice of acceptance,* unless a bill wasn't paid and then when the bill isn't paid, that is a legitimate issue and [insurers] are supposed to issue a denial if they are refusing to pay a bill."

*Id.* (emphasis added).

When asked whether the new statutory language would encourage workers to secure an attorney or to seek out clarification from a doctor to ensure that they were not cut off from services to which they were entitled, Mannix responded:

> "*The acceptance itself does not have any negative consequences for the worker.* The negative consequences are if something isn't paid. If later on there is an issue about whether or not there is a new injury, it is important to go back and see what was accepted on the claim."

*Id.* (emphasis added).

Nothing in that legislative history suggests that, by enacting provisions relating to the listing of accepted conditions or to requesting acceptance of new or omitted conditions, the legislature intended to modify the incident-based definition of "compensable injury." To the contrary, the legislative history establishes that an insurer's or employer's obligation to specify the accepted conditions was not intended to have an adverse effect on a worker's right to benefits as a result of a compensable injury.

Thus, our review of the legislative history leads us to conclude that, by enacting requirements relating to the

listing of accepted conditions and the request for acceptance of new or omitted conditions, the legislature never intended to change the incident-based focus of the definition of "compensable injury" in ORS 656.005(7)(a). Specifically, the legislature never meant to equate a "compensable injury" only with an "accepted condition." We therefore conclude, as we and the Supreme Court have held in many cases, that the "otherwise compensable injury" as used in ORS 656.266(2)(a) and ORS 656.262(6)(c) is, as defined in ORS 656.005(7)(a), the work injury resulting from the work accident that caused the disability or need for treatment. *See, e.g., Schuler v. Beaverton School District No. 48J,* 334 Or 290, 296, 48 P3d 820 (2002) (claimant's burden is to show that work-related injury is major contributing cause of need for treatment of combined condition); *Kenimer v. SAIF,* 183 Or App 131, 136, 51 P3d 632 (2002) ("[A] claimant's combined condition is compensable if the work injury * * * is the major contributing cause of the need for treatment of the combined condition."); *SAIF v. Nehl,* 148 Or App 101, 106, 939 P2d 96, *adh'd to as modified on recons,* 149 Or App 309, 942 P2d 859 (1997), *rev den,* 326 Or 389 (1998) (on-the-job injury must be the major contributing cause of the need for treatment of the combined condition).

SAIF argues that our opinion in *Reid* supports its interpretation that the accepted condition and the "otherwise compensable condition" are one and the same. Although we agree with SAIF that there is *dicta* in *Reid* that suggests that interpretation, *Reid* is distinguishable from the case at hand. 241 Or App at 503. In that case, the claimant suffered from a preexisting degenerative disc condition at C5-6. *Id.* at 498. She then experienced a work-related cervical strain. Her doctors also identified a separate "C5-6 disc injury," diagnosed as a disc bulge, for which she made a separate claim. SAIF accepted the cervical strain as a "combined condition" with the degenerative disc condition but denied the disc injury. *Id.* at 498-99.

The board ruled that the C5-6 disc injury was compensable, but not as a part of the accepted combined condition. Rather, the disc injury was independently compensable, apart from the combined condition. Thus, SAIF's denial of the combined condition could have no effect on the C5-6

disc injury. The claimant's work-related C5-6 disc injury remained compensable and one of the causes of her ongoing symptoms. It just so happened that the disc injury was at exactly the same level of the spine as the degenerative disc condition that preexisted the injury and had combined with the compensable injury. The board explained that, for purposes of resolving the combined-condition denial, the focus was on whether the claimant's *accepted cervical strain* remained the major contributing cause of the disability or need for treatment of the combined condition. *Id.* at 502.

The coincidental nature of the preexisting condition and the work-related injury at C5-6 was not lost on us. We held, in essence, that the combined condition denial did not affect the claimant's accepted cervical disc injury, which was not a part of the "actual combined condition that was accepted and then denied." *Id.* at 503. Thus, we held that, contrary to the claimant's contention, the combined condition denial would not affect the compensability of the separate, accepted C5-6 injury. *Id.* at 502-03. However, we also said in *dicta* that, for purposes of determining whether SAIF had properly denied the combined condition, "it is correct under ORS 656.005(7)(a)(B) to focus on the compensable injury that was shown to have combined with the preexisting condition, and on the actual combined condition that was accepted and then denied—in this case, the cervical strain that combined with claimant's preexisting degenerative disc disease." *Id.* at 503. There is no question that that *dicta* in *Reid* expressed agreement with the board's analysis that, in the context of a combined-condition denial, the "otherwise compensable injury" is the compensable condition listed in the insurer's notice of acceptance. In light of our examination of our prior case law, the legislative history, and, in particular, the explanation given by Representative Mannix concerning the intended effect of the 1995 amendments, we now conclude that our understanding in *Reid* was incorrect. As Representative Mannix explained, as defined in ORS 656.005(7)(a)(B), a compensable injury is the accidental but work-related injury incident that gives rise to a claim. To satisfy the burden of proof described in ORS 656.266(2)(a) to deny a combined condition, the insurer must establish that the "otherwise compensable injury," *i.e.*, the accidental

work injury, is no longer the major contributing cause of the disability or need for treatment of the combined condition.

We recognize that our conclusion is potentially at odds with what we and the Supreme Court have said in *dicta* in the context of medical service disputes. *See, e.g.,* *SAIF v. Sprague*, 346 Or 661, 217 P3d 644 (2009) (*Sprague III*); *SAIF v. Swartz*, 247 Or App 515, 522-23, 270 P3d 335 (2011) (for purposes of a medical services claim under ORS 656.245, a "compensable injury" is the condition previously accepted (citing *SAIF v. Martinez*, 219 Or App 182, 190-91, 182 P3d 873 (2008)); *Sprague v. United States Bakery*, 199 Or App 435, 112 P3d 362, *adh'd to as modified on recons*, 200 Or App 569, 116 P3d 251 (2005), *rev den*, 340 Or 157 (2006) (*Sprague I*). In those cases, however, we did not have this precise issue before us. Furthermore, under the Supreme Court's pre-*Gaines* template of statutory construction, we had not examined the legislative history that we now find so persuasive of the legislature's intentions.

Our decision in *Multifoods Specialty Distribution v. McAtee*, 164 Or App 654, 993 P2d 174 (1999), *aff'd on other grounds*, 333 Or 629, 43 P3d 1101 (2002), lends no credence to SAIF's argument. That case was fact specific and involved a very different issue—the question of responsibility under ORS 656.308. There, the claimant was injured when he slipped and fell while working for Multifoods Specialty Distribution (Multifoods). Multifoods accepted an "acute lumbar strain (combined condition)." 164 Or App at 656. The claimant also had a preexisting condition—a work-related disc herniation and degenerative disc disease—that had been accepted by Wausau Insurance Co., a previous insurer for the employer. An interpretation of ORS 656.262(7) was not involved in that case. There was no question that the preexisting condition was compensable. The only question in that case was whether, when it accepted the claimant's acute lumbar strain as a combined condition, Multifoods assumed responsibility for the preexisting condition as well under ORS 656.308(1). 164 Or App at 657.

We rejected Wausau's contention that responsibility for the preexisting condition had shifted to Multifoods, explaining that, under ORS 656.308, responsibility shifts

only when there is a new compensable injury involving the same condition. We reasoned that the accepted strain was not the same condition as that involved in the earlier accepted condition. 164 Or App at 660. Thus, responsibility for the preexisting condition did not shift to Multifoods, and Multifoods could deny the claimant's combined condition, because "the new injury was no longer the major contributing cause of the need for treatment * * *." *Id.* at 657. Responsibility for the preexisting condition remained with Wausau. As Representative Mannix noted in his testimony on the statutory changes to the definition of compensable injury, the requirement of ORS 656.262(6) that the insurer or employer accept a specific condition is a function of establishing "responsibility" among potentially liable employers under ORS 656.308, but has no adverse effect on the compensability of an injured worker's claim.

The Supreme Court allowed review in *Multifoods*. It affirmed our opinion holding that responsibility for the claimant's degenerative condition had not shifted to his current employer, Multifoods, when it accepted a combined condition, reasoning that the new compensable injury did not involve the same condition as the preexisting degenerative condition. 333 Or at 636. The court said that "[t]he record * * * supports only a finding that the preexisting degenerative disc disease caused or prolonged the need for treatment for the lumbar strain as a combined condition under ORS 656.005(7)(a)(B)." *Id.* at 636-37.

However, the court also took up the question of whether it was permissible for the employer to deny the combined condition. In a paraphrase of ORS 656.005(7)(a)(B), the court said that "[a] 'combined condition' is compensable 'only if, so long as and to the extent that' the new injury is the major contributing cause of the combined condition." *Id.* at 634. The court wrote further:

> "ORS 656.262(6)(c) provides that an employer may deny a combined condition if the otherwise compensable injury ceases to be the major contributing cause of the combined condition. Further, ORS 656.262(7)(b) provides that, to close an accepted claim, the employer must issue a written denial to the worker stating that the accepted injury is no

longer the major contributing cause of the worker's combined condition. A subsequent employer who accepts a compensable injury with a combined condition also is responsible for the pre-existing condition until the new condition is no longer the major contributing cause of the combined condition. At that point, the new employer may issue a written denial and close the claim."

*Id.* at 637 (footnotes omitted). The court explained that the medical evidence in the case was that the "initial accident" was the major contributing cause of the disability and need for treatment of the combined condition, but that currently there was no other reason for pain except the degenerative condition. *Id.* The claim therefore could be denied because the "accepted injury," *i.e.*, the injury incident, was no longer the major contributing cause of the combined condition. ORS 656.262(7)(b). In explaining that the employer was permitted, therefore, to deny the combined condition claim, the court said:

"As we have explained, a 'combined condition' is compensable only if the new injury is the major contributing cause of the combined condition. ORS 656.005(7)(a)(B). As of January 1997, because the *lumbar strain* was no longer the major contributing cause of claimant's physical complaints, ORS 656.262(7)(b) permitted employer to issue a denial of the claim."

333 Or at 638 (emphasis added). It would appear that the court's reference to the lumbar strain was a reference to the accidental injury incident. That happened to be the condition that the employer had accepted in *Multifoods*. Thus, consistent with the medical evidence, the court concluded that the combined condition could be denied because the otherwise compensable injury—*i.e.*, the injury incident—was no longer the major contributing cause of the claimant's need for treatment. *Id.*

However, contrary to SAIF's contention, the court did not, in *Multifoods*, take up the question that we now consider here, whether the denial of a combined condition depends on the "accepted condition" no longer being the major contributing cause of the combined condition. As we conclude here, the answer to that question is no. As the court said in *Multifoods*, a combined condition remains

compensable if the otherwise compensable injury remains the major contributing cause of the need for treatment and disability of the combined condition. 333 Or at 637.

In this case, SAIF has conceded that the medical record supports claimant's contention that the compensable injury exacerbated the preexisting condition, and SAIF has accepted a combined condition. As noted, the board in this case held that SAIF satisfied its burden under ORS 656.266(2)(a) by proving that claimant's accepted lumbar strain is no longer the major contributing cause of the combined condition. As explained herein, that is not the correct test. The question is whether claimant's work-related injury incident is the major contributing cause of the combined condition. Therefore, we remand this case to the board for it to reconsider that issue under the correct legal standard.

Reversed and remanded.